**UNITED STATES of America, Appellee,**

v.

**Israel HAZUT, Defendant,**

**Tal Shitrit, Defendant–Appellant.**

**Docket No. 96–1683.**

United States Court of Appeals, Second Circuit.

Submitted Oct. 27, 1997.

Decided March 25, 1998.

Michele L. Adelman, Asst. U.S. Atty., Eastern District of New York, Brooklyn, NY (Zachary W. Carter, U.S. Atty., Emily Berger, Asst. U.S. Atty., Eastern District of New York, Brooklyn, NY, of counsel), for Appellee.

Julia Pamela Heit, New York City, for Defendant–Appellant.

Before: FEINBERG, CARDAMONE, and WALKER, Circuit Judges.

CARDAMONE, Circuit Judge:

Defendant Tal Shitrit appeals from the sentence he received following his guilty plea to the crime of conspiracy to distribute and to possess with intent to distribute a controlled substance. Sentence was imposed in the United States District Court for the Eastern District of New York, Edward R. Korman, Judge, and entered on October 16, 1996.

Defendant contends that the district court improperly included in its sentencing determination a quantity of pills that ultimately were found to contain only salt and caffeine.

He insists he intended from the start to sell these harmless pills to his buyers, in place of pills containing a controlled substance, in order to defraud them. Consequently, he reasons, without the requisite intent to sell a controlled substance, his base offense level under the Sentencing Guidelines should be calculated exclusive of the dummy pills.

Determining that a quantity of pills sold as controlled substances are "fake" is a simple matter because, as in this case, the substances in question can be tested in a laboratory. More difficult to decide is what a defendant *intended* to sell, for there, that which divides what is true from what is false is a hair-like line. To resolve this question, we look to see whether the government satisfied its ultimate burden of proof as to what quantity of drugs should have been included in defendant's base offense level, and whether, under amended language in the Sentencing Guidelines commentary, defendant had any responsibility to counter that evidence with more than an alternative explanation. On this record, we are satisfied that the district court as factfinder correctly determined that defendant intended to sell and deliver a controlled substance.

## BACKGROUND

Defendant Shitrit was indicted on one count of conspiracy to distribute and to possess with intent to distribute MDMA, in violation of 21 U.S.C. §§ 841 and 846.[1] The indictment was based upon two separate transactions involving Shitrit, one having occurred in October 1995 and the other in December 1995. MDMA, short for methylenedioxymethamphetamine, is commonly known as "ecstasy" and distributed under different brand names. The pills at issue on this appeal were "playboy" pills.

Defendant pled guilty before Magistrate Judge A. Simon Chrein on April 29, 1996. No plea agreement was drafted, and neither party agreed to the quantity of drugs involved. Recognizing that the amount of drugs was irrelevant for purposes of estab-

lishing defendant's participation in the conspiracy, the magistrate judge accepted the plea and deferred for sentencing the question of what quantity of drugs should be included in Shitrit's base offense level under the Sentencing Guidelines.

Defendant was subsequently sentenced before Judge Edward R. Korman. Laboratory reports submitted by the prosecution showed that the 400 pills supplied by Shitrit and seized by the government in October contained MDMA, while the roughly 4,400 pills taken from the separate December shipment contained only salt and caffeine. The government contends that defendant believed all of the pills he sold were genuine playboy pills, and that therefore the entire quantity of 4,800 should be included for sentencing purposes. In support of this proposition, the prosecution submitted transcripts of three taped phone conversations involving Shitrit, who was in Miami, and two of his co-defendants, Israel Hazut and Michel El, both of whom were in New York City.

The first taped conversation took place on December 7, 1995 at 1:04 p.m. Shitrit begins by telling Hazut that he has sent him 10 sample MDMA pills. The two men then begin discussing money matters, with Shitrit expressing concern about owing money to other people and being short of money when the drug transactions are completed. The focus of the taped conversation later turns to how to identify counterfeit drugs. Shitrit explains that he had not had time to try the new shipment from which the samples came, but planned to do so over the upcoming weekend.

Defendant is again recorded talking to Hazut four days later on December 11, 1995 at 10:06 a.m. He tells Hazut that he sent 4,440 pills, which are supposed to arrive that same day. When defendant asks about money owed, Hazut reassures him he will be paid. The final tape-recorded call was placed by Shitrit later the same day at 6:55 p.m. Instead of reaching Hazut, defendant is connected to Michel El. Defendant warns El

---

1. Shitrit was indicted along with Israel Hazut, Michel El, Isaac Green, Mordi Barak, Isabel Beaudry, and Phillip (last name unknown). Hazut was a co-defendant in this case, though not a party to this appeal. What happened to the other indicted parties is not revealed by the record.

that the shipment of pills is "hot," and El should not sign for it. He also instructs El to say he does not know to whom the package was sent, and to remove any incriminating evidence from the house.

Defense counsel counters the obvious prosecution theory—that defendant would warn his co-conspirators about the package of pills being "hot" only if he believed they contained genuine playboy pills—by offering a benign explanation for each of Shitrit's calls. Essentially, it is asserted, Shitrit was setting up Hazut and El to defraud them. Under this theory, defendant told Hazut on December 7 that he had not yet tried the pills so as to have a ready excuse if Hazut eventually discovered they were fake. On December 11, defendant's warning that the pills were "hot" is characterized as a means of protecting himself from implication in the earlier October sale of ecstasy pills.

At the sentencing hearing, the district court found that the balance of evidence tipped in the government's favor and included the 4,440 salt and caffeine pills in Shitrit's base offense level on the grounds that defendant believed he was selling a controlled substance. Judge Korman, although acknowledging the possibility that defendant may have tried to defraud Hazut and El, stated that he found defense counsel's explanation, absent supporting evidence, to be "too speculative." Having made this determination, the district court next considered and granted defendant's request for a downward departure based on extraordinary family circumstances. The sentence ultimately imposed was 18 months of imprisonment, three years of supervised release, and a $50 special assessment.

## DISCUSSION

### I   Standard of Review

The quantity of drugs attributable to a defendant at the time of sentencing is a question of fact for the district court, subject to a clearly erroneous standard of review. *See United States v. Desimone,* 119 F.3d 217, 228 (2d Cir.1997); *United States v. Jones,* 30 F.3d 276, 286 (2d Cir.1994). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Here, since the parties did not agree regarding the amount of drugs involved in Shitrit's criminal activity at the time the plea was entered, the district court was obliged to make such a finding.

### II   Burden of Proof

Both parties agree that the government must prove by a preponderance of the evidence the amount of narcotics involved in Shitrit's criminal activity in order to determine his base offense level under the Sentencing Guidelines. *See Desimone,* 119 F.3d at 228; *Jones,* 30 F.3d at 286; *United States v. Hendrickson,* 26 F.3d 321, 332 (2d Cir. 1994), *cert. denied,* —— U.S. ——, 117 S.Ct. 1275, 137 L.Ed.2d 351 (1997). The district court concluded that the government had met its burden in this case. If the appellate arguments went no further, this case could be affirmed on that ground alone.

Yet, defendant contends the district court impermissibly shifted the burden of proof to him, as illustrated by its statement that it *might have ruled the other way* had Shitrit submitted some evidence—such as his own testimony—to support the proposition that he was engaged in intentional fraud. This line of argument causes us to reconsider what responsibility, if any, a defendant has to refute evidence put forth by the prosecution and used by the sentencing court for purposes of calculating a base offense level. We turn first to the Sentencing Guidelines for an answer.

### A.   *What the Government Must Show*

A sentencing court looks to U.S.S.G. § 2D1.1 when setting the base offense level for a convicted defendant. The Commentary following this section is particularly helpful in guiding a court through the necessary calculations. For drug sale offenses, Application Note 12 of the Commentary is instructive. It provides in part: "In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled

substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense." U.S.S.G. § 2D1.1, comment. (n.12) (1997). This language was in effect at the time Shitrit was sentenced in 1996. *See* Amendment 518, U.S.S.G.App. C at 341, 342, 344 (1997) (effective Nov. 1, 1995). Application Note 12 applies in this case because defendant's crime of conspiracy included "an agreement to sell a controlled substance," namely the ecstasy pills. The government therefore has the burden to show either the "agreed-upon quantity" or the "amount delivered" for purposes of determining defendant's base offense level. But, the government's burden does not end there.

■ "Quantity" and "amount" are not purely mathematical calculations, but rather also embody the concept of the amount of illegal drugs a defendant *intended* to produce. *See Desimone,* 119 F.3d at 228 ("Where the government contends that the defendant personally negotiated to produce a contested quantity of drugs, the proof must demonstrate that the defendant *intended* to produce such an amount."); *Hendrickson,* 26 F.3d at 332 ("Thus, where the Government asserts that the defendant personally 'negotiated' to produce contested quantities ... the Government bears the burden of proving that the defendant *intended* to produce such an amount."). Since Shitrit challenges the government's assertion that he meant to sell genuine playboy pills in December 1995, what defendant in fact intended becomes a central element at sentencing. Thus, the prosecution has the added burden of showing that defendant believed the pills he sold contained MDMA.

### B. *What Defendant Must Show*

■ We next consider decisional law. Prior to 1995, circuit courts disagreed about whether the government or the defendant bore the responsibility of showing the defendant's intent and ability to produce the alleged quantity of drugs. *See United States v. Argencourt,* 996 F.2d 1300, 1307 n. 10 (1st Cir.1993) (discussing disagreement). The language at the heart of this disagreement

was found in Application Note 12, following the statement just quoted in the preceding section. That language read, "where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing." Amendment 518, U.S.S.G.App. C at 342. In *Hendrickson,* we decided that under this language, the burden of proof rested on the government. *See Hendrickson,* 26 F.3d at 332, 345.

In 1995, the language of Application Note 12 was changed to provide

> If, however, *the defendant establishes* that he or she did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that *the defendant establishes* that he or she did not intend to provide or was not reasonably capable of providing.

U.S.S.G. § 2D1.1, comment. (n.12); Amendment 518, U.S.S.G.App. C at 342 (emphasis added).

The repeated use of the phrase, "the defendant establishes," strongly suggests that for a district court to calculate a base offense level lower than that called for by the government's proof, the defendant must produce some evidence of his or her lack of intent or capability. We hinted at this in *Desimone* when we stated that "where a defendant disavows a prior representation of his intent and ability to obtain narcotics, the sentencing court must consider those contradictory statements in its assessment of the defendant's capability and intent." 119 F.3d at 229.

The explanatory text included in the amendment says nothing to undermine our conclusion. The reason for the amended commentary was that "[d]isputes over the interpretation of this application note have produced much litigation." Amendment 518, U.S.S.G.App. C at 344. This statement is then followed by a string citation of cases

from eight circuits, not including this Circuit. Those cases demonstrate a lack of consensus as to where the burden of proof to establish intent and ability lies. *See, e.g., United States v. Tillman,* 8 F.3d 17, 19 (11th Cir. 1993) (burden on government); *United States v. Smiley,* 997 F.2d 475, 480–81 n. 7 (8th Cir.1993) (acknowledging circuits' discord and suggesting burden on defendant); *United States v. Barnes,* 993 F.2d 680, 683–84 (9th Cir.1993) (burden on defendant); *United States v. Rodriguez,* 975 F.2d 999, 1008 (3d Cir.1992) (implicitly assigning burden to government); *United States v. Christian,* 942 F.2d 363, 368 (6th Cir.1991) (burden on defendant); *United States v. Richardson,* 939 F.2d 135, 142–43 (4th Cir.1991) (finding no evidence of ability in the record, but not deciding which side has burden); *United States v. Ruiz,* 932 F.2d 1174, 1183–84 (7th Cir.1991) (burden on government); *United States v. Bradley,* 917 F.2d 601, 605 (1st Cir.1990) (burden on government).

It is important to recognize that the amendment to Application Note 12 does not answer the question of who carries the *ultimate* burden of proof with respect to intent or ability. Somewhat ironically—considering why the new language was inserted—this silence fails to explain exactly what dispute the amendment is designed to address, or in what way the dispute is to be resolved. With the amendment giving no strong direction, we do not see it as requiring us to rule differently than we did in *Hendrickson* and *Desimone.*

Instead, we interpret the amendment to impose some burden of production on a defendant, requiring him to respond with more than counsel's argument that his client lacked intent and ability. In this case, the district court suggested defendant's own testimony as a potential source of evidence, but other possibilities may exist. In any event, we conclude that a defendant has the burden to respond to evidence produced by the prosecution, which the sentencing court uses in determining a base offense level, although the ultimate burden of proof with respect to intent and ability rests with the government.

## III Whether the Burdens Have Been Met

We pass now to an analysis of whether the respective burdens have been discharged. Since no one disputes including in Shitrit's sentence the 400 ecstasy pills sold in October 1995, we limit analysis to the roughly 4,400 pills involved in the December 11, 1995 shipment.

### A. *Quantity of Pills*

■ Defendant's conversation with Israel Hazut on December 11, 1995 clearly establishes that the agreed-upon quantity was 4,440 playboy pills. Further, approximately 4,400 playboy pills were seized and sent to a lab for testing. Defendant does not contest the actual number of pills sent to New York. Thus, the government has adequately proven how many pills were involved in the shipment.

### B. *Defendant's Intent and Ability*

■ The main evidence submitted on defendant's intent and ability to sell a controlled substance—the taped conversations—satisfy the "preponderance of the evidence" standard of proof. Two different admissions by Shitrit of his intent to sell genuine playboy pills to Hazut are found in the tapes. One is his statement during the December 7, 1995 telephone call that he sent 10 sample pills to Hazut. The other is his statement during the December 11, 1995 telephone call that he mailed 4,440 pills, scheduled to arrive that same day.

The *Hendrickson* court equated "intent" with "agree." *See* 26 F.3d at 333 ("[T]he Government was required to prove that the conspirators *intended* to produce, i.e., *agreed* to produce, such amounts."). In that case, the defendant at one time merely proposed to transport an amount of heroin from Nigeria, and his original sentence incorporated that amount even though he never initiated or followed through on that plan. We found insufficient evidence of intent and remanded for resentencing. *See id.* at 341. In contrast, Shitrit plainly agreed in his two phone calls with Hazut to ship thousands of playboy pills to New York City, and in fact sent two packages. While we certainly would not expect to hear Shitrit confess to his buyers that

he was purposefully sending counterfeit drugs so as to defraud them, we cannot ignore that on their face, these statements by defendant indicate an intent to sell a controlled substance. Moreover, "negotiations ordinarily constitute reliable admissions as to a defendant's intent to produce a particular quantity of narcotics in the course of a conspiracy." *Desimone,* 119 F.3d at 229.

In addition, defendant sold and admits to selling on an earlier occasion 400 genuine playboy pills, which sale was included in the indictment. The lab report and defendant's own admission before the magistrate judge at the time his guilty plea was entered corroborate his involvement in that illegal drug sale. The district court also emphasized—and rightfully so—the significance of defendant having called Michel El on the night of December 11, 1995 to warn him that the package of 4,440 pills was "hot." The thrust of the conversation is that Shitrit called ahead to avoid implicating himself, Hazut, and El in an illegal drug sale.

Taken together, the above evidence satisfies the government's burden of showing that defendant believed the playboy pills contained the drug ecstasy. *See United States v. Oviedo,* 525 F.2d 881, 882–83 & n. 4 (5th Cir.1976) (summarily dismissing defendant's claim that insufficient evidence existed to establish his belief that sham heroin was in fact genuine heroin after noting that defendant had secreted the substance in his apartment and negotiated to sell heroin to an undercover agent).

### C. *Defendant's Counterargument*

We turn finally to the language in Application Note 12 that says if defendant establishes his lack of intent or his lack of capability to provide the agreed-upon quantity of drugs, the sentencing court shall exclude that amount so established from the offense level determination. We are thereby required to look at the evidence Shitrit put forth to suggest that the amount of illegal drugs involved in the transaction is lower than the government postulates. In so doing, we must keep in mind that the government is not required to refute all possible explanations for defendant's behavior when first setting out its theory. Rather, once the government has met its burden with respect to quantity, the defendant bears the burden of responding to that evidence.

Here the defendant presents an alternative explanation that he at all times intended to deliver salt and caffeine pills, so as to defraud his buyers and make off with the cash. Yet this explanation comes simply from the mouths of his attorneys, without any supporting proof. The district court was justified in characterizing it as "too speculative." *See Desimone,* 119 F.3d at 229 ("Absent evidence other than [defendant's] own post-arrest assertion that he intended to commit a robbery, the sentencing court was justified in relying on [defendant's] pre-arrest promises to deliver five kilograms of cocaine."). Because the defendant failed to submit anything to undermine the government's assertions, he failed to establish his lack of intent or capability. As a result, he cannot counter the quantity of drugs the government's proof demonstrated he sold. Consequently, we see no error in the district court's calculating the base offense level to include the 4,440 playboy pills.

### CONCLUSION

In sum, during the sentencing of an individual convicted of an offense involving an agreement to sell a controlled substance, the government bears the burden of proof with respect to the amount of drugs that should be included in a defendant's base offense level. "Amount" means not only quantity of drugs involved, but also a defendant's intent and ability to produce that quantity. Once the government meets this burden, the defendant must produce evidence tending to establish lack of intent or inability to deliver the alleged quantity of drugs. Failure of the defendant to meet this burden will result in the sentencing court relying upon the amount set forth by the prosecution in setting the defendant's offense level. Here, there was no successful refutation by defendant of the government's proof.

Accordingly, having also considered appellant's other arguments and finding them to

be without merit, the judgment of the district court is affirmed.