UNITED STATES of America,
Appellee,

v.

Olga MORENO, Hector Becerra,
Defendants,

Oscar Fabio Moreno, Hernan Moreno,
Defendants–Appellants.

Docket Nos. 98–1293, 98–1296.

United States Court of Appeals,
Second Circuit.

Argued: March 8, 1999.

Decided: June 22, 1999.

---

M. Katherine Baird, Assistant United States Attorney for the Southern District of New York, New York, N.Y. (Mary Jo White, United States Attorney, Christine H. Chung, Assistant United States Attorney, New York, NY, of counsel), for Appellee.

Edward S. Panzer, New York, N.Y. (Robert A. Culp, of counsel), for Defendant–Appellant Oscar Fabio Moreno.

Jorge Guttlein, Aranda & Guttlein, New York, N.Y. (Christine E. Fernandez, of counsel), for Defendant–Appellant Hernan Moreno.

Before: CARDAMONE, STRAUB, and KEITH,* Circuit Judges.

STRAUB, Circuit Judge:

Defendants–Appellants Oscar Fabio Moreno ("Oscar") and Hernan Moreno ("Hernan") (collectively, the "Morenos") appeal from judgments of the United States District Court for the Southern District of New York (Sonia Sotomayor, *Judge*) convicting them, following a jury trial, of conspiring to violate the narcotics laws, in violation of 21 U.S.C. § 846, maintaining a place for the purpose of manufacturing, distributing, or using narcotics, in violation of 21 U.S.C. § 856, and conspiring to tamper with a witness, in violation of 18 U.S.C. § 371, and sentencing them both to life imprisonment. On appeal, the Morenos contend, *inter alia,* that (1) the evidence was insufficient to convict them; (2) a new trial is required because of alleged perjury committed by several government witnesses; and, (3) the District Court erred in its determination of the amount of crack cocaine (also known as "cocaine base" or "crack") involved in the offense. Following our decision in *United States v. Barnes,* 158 F.3d 662 (2d Cir. 1998), the defendants raised an additional argument—that because they were convicted by general verdict of conspiracy to violate the narcotics laws, we should assume that the conviction was for conspiracy to distribute the controlled substance, either crack or powder cocaine, with the more lenient statutory maximum penalty. Accordingly, they argue that the forty-year statutory maximum for distribution of between 500 grams and 5 kilograms of powder cocaine set forth in 21 U.S.C. § 841(b)(1)(B), and not the statutory maximum of life imprisonment for 50 grams of crack cocaine provided in 21 U.S.C. § 841(b)(1)(A), applies and that we should order them resentenced accordingly. Because we agree that the defendants should be sentenced based upon the type of narcotics involved in the drug conspiracy that yields the lower statutory maximum sentence, we remand for a determination of the amount of powder cocaine involved in the offense. *See Barnes,* 158 F.3d at 668. We reject the Morenos' remaining arguments and affirm in all other respects.

* The Honorable Damon J. Keith, of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

## BACKGROUND

On appeal of a judgment of conviction where a defendant raises a claim of insufficient evidence, we view the evidence in the light most favorable to the government. *See United States v. Morrison,* 153 F.3d 34, 49 (2d Cir.1998). At trial, the government introduced the testimony of four cooperating witnesses who described various aspects of a drug distribution business in the Bronx that the Morenos operated from 1989 until February 1994. Mateo Pimentel ("Pimentel"), who worked for several other drug dealers during the period of the Morenos' operation, testified that between 1989 and 1990, Hernan ran a drug "spot" on a staircase inside 1020 Walton Avenue in the Bronx that employed seven or eight workers. Oscar supplied the workers with fifty-bag bunches of cocaine in small amounts and collected the money from purchases. Pimentel testified that in 1990, Hernan's organization left the staircase at 1020 Walton and began selling drugs in front of the building. During this time, Oscar was not only supplying drugs but was also selling powder cocaine and crack cocaine and occasionally bartering drugs for other merchandise. Later, the Morenos moved their operation to the corner of 165th Street and Walton Avenue.

In 1992, Pimentel both worked for a dealer named "Fon" and began to sell drugs on his own, purchasing his drugs from Hernan and Oscar at Oscar's apartment at 1055 Walton Avenue For example, Pimentel testified that on one occasion he went to 1055 Walton Avenue and watched Oscar weigh out fourteen grams of cocaine; on two other occasions, the first of which was in July or August 1992, Pimentel made two one-kilogram purchases of cocaine. Another witness at trial, Pedro Silva Maldonado ("Silva"), who also worked for Fon, testified that he and Pimentel purchased drugs from Hernan and Oscar on several occasions. In November 1992, Silva was present when Oscar gave Pimentel a shopping bag full of cocaine inside 1055 Walton. Silva and Pimentel made an $11,000 purchase of cocaine from the Morenos at Oscar's apartment at 1055 Walton in December 1992. Silva and another cooperating witness who testified at trial, Pablo Reyes ("Reyes"), were arrested in a raid on Fon's drug apartment at 1062 Walton Avenue on December 17, 1992. Pimentel escaped by jumping out a window; Hernan, who was also present, left before the police arrived.

The government also introduced testimony concerning the "controlled delivery" of a package that had been intercepted by the United States Customs Service and was discovered to contain cocaine. The package was addressed to Olga Moreno ("Olga"), Hernan's and Oscar's sister, at the apartment she shared with Oscar—Apartment 6C, 1055 Walton Avenue. The Customs Service delivered a dummy package to the apartment, and Olga's boyfriend, Hector Becerra, was arrested when he left the apartment with the package shortly after the delivery. Olga and Oscar were also arrested, and the apartment was searched by agents of the Customs Service, revealing, *inter alia,* a black electronic scale, two air pistols, cash, stereo equipment, baking soda, a balance scale, and gloves.[1]

---

1. This "controlled delivery" formed the basis of the original indictment in this case, filed March 24, 1994, which charged Olga and Oscar Moreno and Hector Becerra with conspiracy to distribute and import cocaine and possession with intent to distribute heroin. A first superseding indictment was then filed, adding heroin distribution as an object of the narcotics conspiracy, and on February 9, 1995, Becerra pleaded guilty to narcotics conspiracy.

Olga and Oscar Moreno were then charged in a second superseding indictment with conspiring to distribute heroin and cocaine (Count One), possession with intent to distribute heroin (Count Two), and maintaining a place for manufacturing and distributing narcotics—1055 Walton Avenue, Apartment 6C (Count Three). Following a ten-day jury trial, Olga was convicted on Counts One and Three, and both Olga and Oscar were acquitted on Count Two. Judge Cederbaum, before whom the case was tried, declared a mistrial as to

The government's witnesses also testified concerning threats made by the defendants to potential cooperating witnesses. In particular, Pimentel's common-law wife, Milagros Taveras, testified about several visits Hernan Moreno, his wife Marina Nunez, and Oscar Moreno made, both prior to the first trial of Olga and Oscar and prior to Oscar's retrial, in which Hernan and Oscar made various threats concerning the possibility that Pimentel would testify against Oscar.

After a jury trial held from May 19, 1997 until May 30, 1997, both Oscar and Hernan were found guilty of each of the three counts in the third superseding indictment. On April 9, 1998, the District Court conducted a *Fatico* hearing to determine the amount of crack cocaine involved in the offense. *See United States v. Fatico*, 579 F.2d 707 (2d Cir.1978), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1221, 59 L.Ed.2d 458 (1979). Pimentel, the sole witness at the hearing, testified that while he worked for a rival drug dealer inside of 1020 Walton, he observed that over a period of three to four months in 1989, Hernan's operation sold 200 to 300 bags of crack cocaine a day, and up to 500 bags per day on the weekends. Each bag of cocaine contained three to four lines of crack, or three to four tenths of a gram of crack. For about five or six months thereafter, the workers in the Morenos' operation sold 100 to 200 bags of crack a day. Based on this testimony, the District Court concluded that the government had met its burden of proving that Hernan and Oscar were responsible for over 1.5 kilograms of crack cocaine. However, the District Court did not make a corresponding determination of the amount of powder cocaine involved in the offense.

On May 26, 1998, the District Court sentenced the defendants principally to life imprisonment. Both defendants received upward adjustments for obstruction of justice for witness tampering pursuant to Sentencing Guideline § 3C1.1 and for leadership roles (four levels for Hernan, three for Oscar) pursuant to § 3B1.1. Oscar also received a two-level upward adjustment for possession of a firearm in connection with the offense pursuant to Guideline § 2D1.1(b)(1).

This timely appeal followed.

## DISCUSSION

### I. *Sufficiency of the Evidence*

The Morenos assert that the evidence at trial was not sufficient to sustain their convictions.[2] A defendant "carries a heavy burden" when challenging the sufficiency of the evidence on appeal. *Morrison*, 153 F.3d at 49. When considering such a claim, we

> must consider the evidence in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government, and we may overturn the conviction only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence.

*Id.* (internal quotation marks and citations omitted).

Counts One and Three with respect to Oscar. Olgas conviction was subsequently affirmed on appeal. *See United States v. Becerra*, 97 F.3d 669 (2d Cir.1996), *cert. denied sub nom. Moreno v. United States*, 519 U.S. 1137, 117 S.Ct. 1006, 136 L.Ed.2d 885 (1997).

Prior to Oscar's retrial on the second superseding indictment, Oscar and Hernan (along with Hernan's wife, Marina Nunez) were arrested, and the government filed a third superseding indictment, which is the indictment upon which the Morenos were tried and convicted and from which this appeal arises.

2. Since Oscar joins in Hernan's arguments pursuant to Fed. R.App. P. 28(i), we assume that Oscar joins in Hernan's challenge to the sufficiency of the evidence.

In essence, the Morenos claim that the testimony of the four cooperating witnesses at trial was contradictory, that none of these witnesses had any direct experience with the Morenos' operation because they did not work for it, and that their testimony regarding rival drug dealers sharing space and working together was incredible. However, it was plainly for the jury to assess the credibility of the witnesses and to decide whether their testimony was believable. The evidence was more than sufficient for the jury to find that Hernan and Oscar engaged in a conspiracy with many others to sell powder cocaine and crack. Pimentel testified, for example, that he observed Hernan actively involved in the sale of drugs in and around Walton and 165th Street from 1989 to 1992, and that Oscar took drugs from Apartment 6C at 1055 Walton and collected money from the sellers. Similarly, the evidence of Hernan's presence at the 1055 Walton apartment, Oscar's constant trips back and forth from 1055 Walton to replenish the dealers' supplies, Pimentel's and Silva's purchases of cocaine from Hernan and Oscar for Fon at 1055 Walton, and the drug paraphernalia seized in Apartment 6C supports the conviction for maintaining a place for distributing drugs. Finally, there was ample evidence of threats to a witness to support the convictions for conspiracy to commit witness tampering.

Accordingly, the Morenos' insufficient evidence claim fails.

## II. *Alleged Perjury By Government Witnesses*

Both defendants argue that they are entitled to a new trial because two government witnesses, Simon Enoa and Reyes, committed perjury. Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, a district court "on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." Fed.R.Crim.P. 33. The motion must be made "within 7 days after verdict ... or within such further time as the court may fix during the 7–day period," or, in the case of newly discovered evidence, within two years after final judgment. *Id.*

In this case, the defendants failed to make a new trial motion before the District Court within seven days. Instead, counsel for Hernan Moreno suggested that he would make such a motion at a sentencing hearing on December 16, 1997—six months after the guilty verdicts—in response to the District Court's refusal to credit Enoa's testimony for sentencing. The District Court rejected this suggested motion and stated that such a motion would amount to "wasting your client's time" because even without Enoa's testimony the evidence against the defendants was "overwhelming." The District Court also stated that Enoa "was one among many informants who took the stand in this case.... There [was] certainly nothing intentional about the government's use of a confidential informant who comes forth with the type of information this one did."

Because this purported motion for a new trial was made far outside the seven-day time limit, and there is no suggestion that the motion is based on newly discovered evidence, it was untimely, and we lack jurisdiction to consider the defendants' argument on appeal. *See, e.g., United States v. Bramlett,* 116 F.3d 1403, 1405 (11th Cir.1997) ("The time limits imposed by Rule 33 are jurisdictional. District Courts therefore lack jurisdiction to grant a new trial ... unless the motion is filed [in timely fashion]."); *United States v. Gaydos,* 108 F.3d 505, 512 (3d Cir.1997); *United States v. Graham,* 97 F.3d 1145, 1147 (8th Cir.1996). Moreover, even if the half-hearted motion before the District Court could be deemed a request to extend the time in which to move for a new trial, the District Court was not permitted to grant such an extension since the extension was not "fix[ed] during the 7–day period" following "verdict or finding of guilty." Fed.R.Crim.P. 33; *see* Fed.R.Crim.P. 45(b) ("[T]he court may not ex-

tend the time for taking any action under Rule[ ] ... 33 ... except to the extent and under the conditions stated in [it].'"). Since Rule 33 provides no relevant basis for extending the time to make the motion, the motion was untimely and was barred.

 Even if the Morenos' claim were not barred, it lacks merit. "Whether the introduction of perjured testimony requires a new trial initially depends on the extent to which the prosecution was aware of the alleged perjury." *United States v. Damblu,* 134 F.3d 490, 493 (2d Cir.1998). If the prosecution "knew or should have known of the perjury, a new trial is warranted if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Wong,* 78 F.3d 73, 81 (2d Cir. 1996); *accord United States v. Wallach,* 935 F.2d 445, 456 (2d Cir.1991), *cert. denied,* 508 U.S. 939, 113 S.Ct. 2414, 124 L.Ed.2d 637 (1993). Where the government "knowingly permitted the introduction of false testimony reversal is 'virtually automatic.'" *Wallach,* 935 F.2d at 456 (quoting *United States v. Stofsky,* 527 F.2d 237, 243 (2d Cir.1975), *cert. denied,* 429 U.S. 819, 97 S.Ct. 65, 66, 50 L.Ed.2d 80 (1976)). However, "[e]ven assuming ... that the government knowingly introduced the perjured testimony ... where independent evidence supports a defendant's conviction, the subsequent discovery that a witness's testimony at trial was perjured will not warrant a new trial." *Wong,* 78 F.3d at 82; *see also United States v. Reyes,* 49 F.3d 63, 68 (2d Cir.1995) (affirming the district court's alternative holding that newly discovered evidence did not warrant a new trial because the new evidence did not directly refute a witness's testimony against the defendant and because another witness provided even greater inculpatory evidence). On the other hand, if the government "was unaware of the perjury at the time of trial, a new trial is warranted only if the testimony was material and the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." *Wong,* 78 F.3d at 81 (internal quotation marks omitted) (alteration in original); *accord Wallach,* 935 F.2d at 456.

In this case, when the potential perjury of Enoa was raised at the December 16, 1997 hearing, the District Court concluded that "[t]here [was] certainly nothing intentional about the government's use of a confidential informant who comes forth with the type of information this one did" and that "[t]he evidence ... was overwhelming against [the defendants]." We agree on both counts. Similarly, we conclude that, even assuming that Reyes' testimony was untruthful, the government neither knew nor should have known of his perjury and the perjured testimony had no effect on the jury's verdict. Thus, the defendants are not entitled to a new trial based on the alleged perjury of Enoa and Reyes.

### III. *Sentencing Issues*

 The Morenos argue that the District Court erred in its determination that over 1.5 kilograms of crack cocaine was involved in the offense, resulting for Sentencing Guidelines purposes in a base offense level of thirty-eight. *See* U.S. Sentencing Guidelines Manual § 2D1.1(c)(1). "The quantity of drugs attributable to a defendant at the time of sentencing is a question of fact for the district court, subject to a clearly erroneous standard of review." *United States v. Hazut,* 140 F.3d 187, 190 (2d Cir.1998). The government must prove the amount of narcotics involved by a preponderance of the evidence. *See United States v. Desimone,* 119 F.3d 217, 228 (2d Cir.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 174, 142 L.Ed.2d 142 (1998).

In the present case, the District Court's determination of the amount of crack cocaine involved in the Morenos' offense was not clearly erroneous. The District Court based its decision on Pimentel's testimony at the *Fatico* hearing on April 9, 1998.

Pimentel observed workers for the Morenos selling 200 to 300 bags of crack cocaine over the course of four to five months in 1989 at 1020 Walton. Over the following five to six months, Hernan's group sold 100 to 200 bags of crack per day in front of 1020 Walton. Thus, even assuming that the Morenos' operation sold only 200 bags of crack per day, they would have sold 1.5 kilograms of crack within twenty-five days. Based on this testimony, the District Judge had ample basis to conclude that Oscar and Hernan were responsible for over 1.5 kilograms of crack.[3]

■ We also reject Oscar's argument that the District Court erred by enhancing his sentence three levels for his role as a manager or supervisor pursuant to § 3B1.1(b) of the Guidelines. Pimentel testified at the *Fatico* hearing and at trial that Oscar supervised the workers, made managerial decisions, delivered drugs and collected money, engaged in bartering transactions with customers, and was, "practically speaking, a partner" with Hernan who negotiated transactions in Hernan's absence. The District Court found as much, and we perceive no error.

After this appeal was fully briefed, the defendants submitted a supplemental letter arguing that their sentences should be vacated and that they should be resentenced in accordance with our recent decision in *United States v. Barnes*, 158 F.3d 662 (2d Cir.1998). In *Barnes*, the defendant was convicted by general verdict of conspiring to possess with intent to distribute four different controlled substances—

cocaine, cocaine base, heroin, and marijuana. *Id.* at 666–67. The District Court sentenced the defendant based upon the cocaine base prong of the conspiracy, yielding a Guidelines sentencing range of 210 to 262 months. *See id.* at 667. Since the sentence involved more than fifty grams of crack, and Barnes had previously been convicted of a felony, 21 U.S.C. § 841(b)(1)(A) provided a mandatory minimum sentence of twenty years, which "increased the minimum end of the Guidelines sentencing range by thirty months" to 240 months. *Id.*

On appeal, Barnes challenged the use of crack cocaine to determine the mandatory minimum under 21 U.S.C. § 841(b)(1), and argued that, because the jury reached a general verdict of guilty on a conspiracy to possess multiple controlled substances, the verdict only authorized the application of the lowest mandatory minimum among the drugs charged. In evaluating Barnes's argument, "we assume[d] that the jury convicted the defendant of conspiring to possess at least one of those controlled substances as to which the evidence was sufficient." *Id.* at 668. However, "[b]ecause the general verdict of guilty [did] not tell us whether the jury convicted the defendant [of conspiring to possess] each of [the controlled substances]," we assumed "that the conviction [was] for conspiracy to possess the controlled substance that carries the most lenient statutorily prescribed sentence" pursuant to 21 U.S.C. § 841(b). *Id.; see also United States v. Orozco–Prada*, 732 F.2d 1076, 1083 (2d Cir.) ("[I]n the absence of a

---

3. This is not a case like *United States v. Shonubi*, 103 F.3d 1085 (2d Cir.1997), on which the defendants rely. In *Shonubi*, we reversed a district court's sentencing calculation where there was no "specific evidence," such as records, admissions or live testimony, "that point[ed] specifically to a drug quantity for which the defendant is responsible." *Id.* at 1090; *see also id.* ("[B]y 'live testimony' we were referring to testimony about [the defendant's] drug transactions."). Rather, the court relied on a combination of drug records, including government records and records of judicial proceedings, the defendant's

arrest statements, statistical extrapolation of the economics of drug smuggling by swallowing, and the defendant's demeanor. *See id.* Here, unlike in *Shonubi*, the District Court credited Pimentel, a witness who personally observed the sales conducted by the defendants' drug organization and had personal knowledge of the volume of business conducted by the Morenos. As we explained in *Shonubi*, this is precisely the type of specific evidence upon which a district court may rely in making a sentencing determination. *See id.*

special verdict, there was no way ... to know whether the jury intended to convict [the defendant] for a cocaine-related conspiracy, for a marijuana-related conspiracy, or for a conspiracy involving both drugs."), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 155, 83 L.Ed.2d 92 (1984). Accordingly, as in *Orozco–Prada,* we gave the government the option of choosing to have the defendant resentenced using "the controlled substance carrying the lowest mandatory minimum and permissive maximum penalty"—21 U.S.C. § 841(b)(1)(C) for 7.5 grams of heroin—or retrying the defendant using a special verdict. *Barnes,* 158 F.3d at 674.

Like the defendant in *Barnes,* the Morenos argue that they should not have been sentenced based upon the crack prong of the conspiracy, which, given the District Court's finding that over 1.5 kilograms of cocaine base were involved in the conspiracy, permits a maximum sentence of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). Instead, they maintain that they should have been sentenced based on the conspiracy to distribute powder cocaine, which they argue permits a maximum sentence of forty years' imprisonment since the government proved only that between 500 grams and 5 kilograms of powder cocaine was involved in their offense.

■ In response, the government argues that we need not remand for resentencing because the evidence at trial sup-ports the conclusion that the quantity of both powder cocaine and crack cocaine distributed by the Morenos' organization would subject them to a statutory maximum penalty of life imprisonment under 21 U.S.C. § 841(b)(1)(A) for either substance.[4] The District Court had based the Morenos' sentence on its finding that their offense involved at least 1.5 kilograms of crack, which is more than sufficient to satisfy the 50 gram minimum to subject the defendants to the statutory range of ten years' to life imprisonment under § 841(b)(1)(A)(iii). The government argues that the trial record supports the additional conclusion that the Morenos conspired to distribute at least 5 kilograms of powder cocaine, thereby subjecting them to the same statutory range of ten years' to life under § 841(b)(1)(A)(ii).

■ We need not resolve this dispute with respect to the amount of powder cocaine involved in the offense because we conclude that the District Court should make the determination of that amount in the first instance. The Guidelines require that "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." U.S. Sentencing Guidelines Manual § 6A1.3(a); *see Fatico,* 579 F.2d 707 (same); *cf. United States v. Madkour,* 930 F.2d 234, 237–38 (2d Cir.), *cert. denied,* 502 U.S. 911, 112 S.Ct. 308, 116 L.Ed.2d 251 (1991) (conclud-

---

4. The government also suggests that because the Indictment in this case charged the defendants with trafficking in a sufficient quantity of either substance to give rise to a violation of 21 U.S.C. § 841(b)(1)(A), *Barnes* and *Orozco–Prada* are not applicable. We have previously stated that "quantity is not an element of the crimes proscribed by Section [] 841(a)," *United States v. Campuzano,* 905 F.2d 677, 679 (2d Cir.) (citations omitted), *cert. denied,* 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990), and the District Court charged the jury in accordance with this principle. Thus, "quantity relates solely to sentencing," *United States v. Madkour,* 930 F.2d 234, 237 (2d Cir.), *cert. denied,* 502 U.S. 911, 112 S.Ct. 308, 116 L.Ed.2d 251 (1991), and to

the extent that an indictment alleges that a particular quantity of drugs is involved or specifically charges a provision of 21 U.S.C. § 841(b), " 'the effect is only to put the defendant on notice that the enhanced penalty provisions of Section 841(b) may apply,' " *id.* (quoting *Campuzano,* 905 F.2d at 679). Accordingly, the fact that the Indictment charged the defendants with trafficking in sufficient quantities of both crack and powder cocaine to give rise to a violation of § 841(b)(1)(A) does not allay the concern we expressed in *Barnes* and *Orozco–Prada* that we do not know for which controlled substance(s), or for what quantities of those substances, the jury concluded that a drug conspiracy existed.

ing that the district court should make a determination at sentencing of the quantity of drugs involved, which in turn determines the applicable statutory minimum and maximum penalties). Here, because this issue is raised for the first time on appeal[5], the District Court did not have an opportunity to make a finding with respect to this disputed sentencing issue. The government concedes that we should remand to the District Court for a hearing to determine the amount of powder cocaine distributed by the Morenos if we have "any doubt regarding whether the charged conspiracy distributed more or less than 5 kg of cocaine."

Accordingly, we remand to the District Court for such a determination. We recognize that in *Barnes* and *Orozco–Prada*, we gave the government a choice between accepting a resentencing of the defendants utilizing a lower mandatory minimum and permissive maximum, and retrying the defendants and seeking a special verdict. However, in both of those cases, the applicability of a more lenient statutory penalty provision was apparently undisputed. *Cf. Barnes*, 158 F.3d at 674; *Orozco–Prada*, 732 F.2d at 1084. Here, because the amount of powder cocaine is disputed, the applicable statutory maximum sentence is disputed as well. Under these circumstances, we conclude, and the parties apparently agree, that a remand is the appropriate result. If the District Court finds that the amount of powder cocaine is greater than 5 kilograms, then the statutory maximum of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A) is available. Since the District Court has already concluded that the Morenos were responsible for the distribution of more than 1.5 kilograms of crack cocaine, and since this is plainly "relevant conduct" pursuant to § 1B1.3 of the Sentencing Guidelines, the defendants' sentences will once again be life imprisonment. However, if the District Court finds that between 500 grams

and 5 kilograms of powder cocaine was involved in the offense, the defendants' sentences would be limited to a maximum of forty years' incarceration pursuant to 21 U.S.C. § 841(b)(1)(B).

## CONCLUSION

We have reviewed all of the defendants' arguments on appeal, and, except to the limited extent discussed above, we find them to be without merit. Accordingly, we affirm the defendants' convictions, but vacate the judgments and remand to the District Court for further proceedings consistent with this opinion.

---

**5.** The fact that the issue is raised for the first time on appeal does not prevent us from reaching it. *See Barnes,* 158 F.3d at 672–73 (rejecting waiver argument).