UNITED STATES of America, Appellee,

v.

Gary GARNER, a/k/a "Mellow G," Defendant–Appellant.

No. 00–1448.

United States Court of Appeals, Second Circuit.

Jan. 18, 2001.

Alexander H. Schwartz, Rubenstein & Green, L.L.C., Westport, CT, for appellant.

James I. Glasser, Assistant United States Attorney; Stephen C. Robinson, United States Attorney, of counsel, New Haven, CN, for appellee.

Present SACK, SOTOMAYOR and KATZMANN, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be, and it hereby is, AFFIRMED.

In July 1999, Garner became a target in a joint investigation by federal, state and local authorities of drug trafficking in Bridgeport, Connecticut. On July 29, 1999, a confidential informant, in a conversation recorded by authorities, arranged to purchase crack cocaine from Garner. Garner told the informant that he sold crack in prepackaged quantities known as "pink slabs," meaning pink plastic bags each containing approximately 90 milligrams of crack. Garner offered to pay the informant to manage a trafficking "spot" in Bridgeport. Garner also said he was an "endless connect" and "never run[s] out of" supply; and that he had "like a half a key," meaning half a kilogram of crack pre-packaged as "pink slabs." Garner then sold the confidential informant a total of 148 pink slabs, with a total weight of 14.2 grams.

On August 16, 1999, the confidential informant and an undercover government agent had another monitored conversation with Garner. Garner said that he had recently dealt with a trafficker "that still owe[s] me ... 34 grams off a quarter," which government agents interpreted to mean 250 grams of cocaine. He also said he had recently thrown another "250 of coke" from his car while being chased by police. Garner also boasted about the general popularity of his "pink slabs" and said he was a "producer" whose operation ran "non-stop 2⁴ around the clock." Garner sold the agent 375 pink slabs of crack with a net weight of 33.5 grams. Apparently referring to that quantity, he told the agent that "quadruple this amount be made by me, sometimes barely."

Garner was arrested on August 24. At the time, he was carrying 300 "pink slabs" weighing a total of 28 grams and $1,238 in cash. A search of Garner's residence revealed equipment and supplies characteristic of what government agents classified as a "drug factory," and a "large scale trafficking operation." Among the items recovered were approximately 5,000 pink baggies; an electronic scale, two strainers and a spoon, and plates, pans and bowls used for drying crack, all containing cocaine residue; a heat sealer; an M1 carbine semi-automatic weapon with a shortened barrel; and prepackaged and loose cocaine totaling approximately five grams.

On January 6, 2000, Garner entered a plea agreement and stipulation of offense conduct in which he acknowledged having possessed with intent to distribute more than 50 grams of crack within 1000 feet of a public elementary school, and having possessed a firearm in connection with his crack possession.

■ A presentence investigation report recommended that Garner be sentenced for having possessed with intent to distribute between 150 and 500 grams of crack. Garner objected, and the court held a three-day *Fatico* hearing ending on May 11, 2000, at the end of which the court adopted the PSR's recommendation as to the drug weight. The court found that the 80 grams of crack Garner either sold to government agents or possessed upon arrest did not "reflect the scale of this offense," and that the preponderance of evidence showed that he was responsible for at least another 70 grams. Accordingly, the court sentenced Garner to 315 months in prison and five years of supervised release. On appeal, Garner challenges only the district court's quantity determination.

■ "The quantity of drugs attributable to a defendant at the time of sentencing is a question of fact for the district court, subject to a clearly erroneous standard of review." *United States v. Hazut*, 140 F.3d 187, 190 (2d Cir.1998). Where the sentencing court determines that the weight of the drugs actually seized from a defendant "does not reflect the scale of the offense," it "shall" approximate the actual quantity, U.S.S.G. § 2D1.1, comment. (n. 12.), based upon a preponderance of the evidence. *See United States v. Moreno*, 181 F.3d 206, 213 (2d Cir.1999). Among the factors the court may consider are "the size or capability of any laboratory involved," U.S.S.G. § 2D1.1, comment. (n. 12), and reliable admissions by the defendant. *United States v. Shonubi*, 998 F.2d 84, 89 (2d Cir.1993) ("*Shonubi II*"). Any evidence of additional quantities must be "specific," that is, it must "point[] specifically to a drug quantity for which the defendant is responsible." *United States v. Shonubi*, 103 F.3d 1085, 1090 (2d Cir. 1997) ("*Shonubi IV*"). Moreover, all quantities on which the defendant is sentenced must be " 'part of the same course of conduct or common scheme or plan.' " *Shonubi II*, 998 F.2d at 89 (quoting U.S.S.G § 1B1.3(a)(2)).

■ Garner contends that the district court erred in finding that the various quantities of drugs he allegedly possessed were part of the same course of conduct. A defendant is said to have engaged in the same "course of conduct" for sentencing purposes if he "has been engaged over time in an identifiable pattern of criminal conduct." *Shonubi II*, 998 F.2d at 89. This standard "does not require that a connection be established among the drug trafficking occasions in terms of participants or overall plan." *Id.* As discussed below, we accept the district court's findings as to the total quantity attributable to Garner. We also conclude that each subpart of this total weight was part of an "identifiable pattern" of conduct. By way

of example, Garner sold three batches of "pink slabs" to the confidential informant and undercover agent; he stated in recorded conversations that he possessed approximately 500 kilograms in "pink slabs"; he stated he was a "producer" of crack; and evidence recovered from his residence indicated he had produced and planned to keep producing crack and package it in pink plastic bags.

Garner next urges that the district court's quantity estimates were not based on sufficiently "specific evidence" as required by *Shonubi IV.* The court based its estimates on various statements by Garner to the confidential informant and on a calculation of the capacity of the drug laboratory found by police in his home. Garner takes particular issue with the district court's reliance on the 5,000 empty pink plastic bags recovered from his apartment as an indicator of his manufacturing capacity. Even setting that troublesome issue aside, we affirm because the district court's estimate was corroborated by at least one sufficiently specific statement by Garner regarding his capacity to produce crack. In connection with the August 16 sale to the agent of 33.5 grams, Garner said he was "a producer" and "quadruple this amount be made by me, sometimes barely." Garner now characterizes that statement as mere "puffing" rather than a reliable indication of actual quantities. We conclude that the district court's contrary finding was not clearly erroneous, particularly in light of the ample physical evidence bolstering Garner's claim to being a "producer." *Cf. Moreno,* 181 F.3d at 214 n. 3; *United States v. Colon,* 961 F.2d 41, 43 (2d Cir.1992). According to the unchallenged testimony of government witnesses, Garner's residence amounted to a "drug factory," of the sort used by "a large scale drug trafficking operation." We thus agree with the district court that Garner's drug laboratory could have and likely did produce at least 70 grams beyond the quantities directly seized by government agents.

The district court's conclusion is further bolstered by the record as a whole. In less than a month, Garner sold 48 grams of crack to government agents and was arrested with another 28 grams; he attempted to hire the confidential informant to manage sales; he showed an intimate familiarity with the drug trade in recorded conversations; and a search of his home produced strong evidence that he was making significant quantities of crack. He also possessed $1,238 in cash at the time of his arrest, even though his last regular employment was as a part time stock person in a supermarket. In light of this evidence, we agree with the district court that Garner's own statements were sufficiently credible and specific to support a finding that he possessed a total of between 150 and 500 grams.

For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.