Freddy FERMIN, Petitioner,

v.

UNITED STATES of America,
Respondent.

Nos. 10 Civ. 5462(VM), 91 CR. 634(VM).

United States District Court,
S.D. New York.

May 4, 2012.

Freddy Fermin, New York, NY, pro se.

Timothy Donald Sini, United States Attorney Office, New York, NY, for Respondent.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Pro se petitioner Freddy Fermin ("Fermin") petitions pursuant to 28 U.S.C. § 2255 ("§ 2255") to vacate, set aside, or otherwise correct his sentence. Fermin, who was sentenced to a 262-month prison term, is currently out of prison serving a six-year term of supervised release. Fermin contends that his sentence must be vacated because the Government violated his Fifth Amendment right to due process and his Sixth Amendment right to the effective assistance of counsel.

By Order dated March 30, 2012, the Court preliminarily denied Fermin's petition, for which the Court now sets forth its findings, reasoning, and conclusions.

## I. BACKGROUND [1]

### A. THE FIRST JUDGMENT OF CONVICTION [2]

Fermin and his brothers Juan and Hector were joint owners of 3–Way Auto Body ("3–Way Auto"), an auto-repair business in Bronx County, New York. In 1990, the New York Drug Enforcement Task Force (the "Task Force"), a collaboration of New York state and federal narcotics officers, began to investigate the Fermin brothers, 3–Way Auto, and their associates (collectively, the "3–Way Auto Organization") for trafficking in controlled substances.

On January 29, 1991, the Government submitted to the Honorable Pierre N. Leval, then a United States District Court Judge of the Southern District of New York, a Title III application to wiretap three telephone lines at 3–Way Auto, including a 52–page affidavit (the "Affidavit") in support of the wiretap by a Task Force member involved in the 3–Way Auto investigation. The Affidavit heavily relied on the statements and observations made by two confidential informants ("CI–1" and "CI–2") as the basis for probable cause to believe that the members of the 3–Way Auto Organization were using the target telephone lines in order to traffic in narcotics. It was later revealed the Affidavit contained several material misstatements and omissions regarding CI–1. *See United*

---

**1.** The factual and procedural summary below and facts discussed throughout this opinion are derived from the Court's review of the record in this case, as well as the following documents and any exhibits attached thereto: Memorandum of Law in Support of Motion to Vacate, Set Aside, or Correct Sentence for a Person in Federal Custody Pursuant to Title 28 U.S.C. § 2255, filed July 19, 2010 (Docket No. 2); Memorandum of Law of the United States of America in Opposition to Freddy Fermin's Motion to Set Aside or Correct His Sentence ("Gov't Reply"), filed Feb. 16, 2011 (Docket No. 436); Pro Se Movant/Petitioner's Reply to the United States of America's Opposition to His Motion Filed Pursuant to 28 U.S.C. § 2255, filed May 16, 2011 (Docket No, 439). Except where specifically referenced, no further citation to these sources will be made.

**2.** Confusingly, the term "judgment of conviction" can be used to refer solely to a criminal defendant's "sentence," *i.e.,* "the punishment imposed on' a criminal wrongdoer," *Black's Law Dictionary* 1393 (8th ed.2004), or to both the "conviction," *i.e.,* "[t]he judgment . . . that a person is guilty of a crime," *id.* at 358, and the sentence. *See id.* at 860 (defining "judgment of conviction" both as "[t]he written record of a criminal judgment, consisting of the plea, the verdict or findings, the adjudication, and the sentence," and as a "sentence in a criminal case"). For the sake of clarity, the Court will use "conviction" to refer to a prisoner's finding of guilt, "sentence" to refer to the punishment imposed, and "judgment of conviction" to refer only to both.

*States v. Juan Fermin,* 32 F.3d 674, 675–77 (2d Cir.1994). However, Judge Leval was unaware of the misinformation, and authorized wiretaps on the target telephone lines. Conversations recorded from these wiretaps were later used as the basis for a warrant to search Fermin's apartment, from which Task Force members recovered drugs and a gun. The recordings, drugs, and gun (the "Wiretap Evidence") were used to implicate Fermin in the 3–Way Auto Organization's narcotics trafficking enterprise.

On July 30, 1991, a grand jury indicted Fermin and other members of the 3–Way Auto Organization for narcotics offenses and related crimes. In that indictment, Fermin was charged with one count of conspiracy to distribute and possess with intent to distribute narcotics in violation of 21 U.S.C. § 846 ("Count Two"), one count of operating a business for the purpose of distributing narcotics in violation of 21 U.S.C. § 856(a) ("Count Three"), two counts of using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) ("Count Four" and "Count Five"), and one count of possession of a weapon as a prior felon in violation of 18 U.S.C. § 922(g) ("Count Six"). On April 14, 1992, a petit jury convicted Fermin of all five counts. Fermin's conviction with respect to Count Five was vacated after trial, with the consent of the Government, by the Honorable Judge Louis J. Freeh, then a United

States District Judge of the Southern District of New York presiding over the trial.

■ On October 15, 1993, Fermin was sentenced by the Honorable Michael B. Mukasey, then a United States District Judge of the Southern District of New York, to a total prison term of 360 months, followed by a ten-year term of supervised release.[3] This first judgment of conviction was entered on October 28, 1993, and became final on February 21, 1995, the date on which the United States Supreme Court denied Fermin's petition for a writ of certiorari.[4]

B. *THE SECOND JUDGMENT OF CONVICTION*

Fermin made three unsuccessful attempts to argue that Government misinformation regarding CI–1 and CI–2 warranted relief, Fermin's first attempt occurred before trial, when he and the other defendants moved under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to suppress the Wiretap Evidence because of the misstatements and omissions in the Affidavit regarding CI–1. This motion was denied by Judge Freeh, who found that even considering the misstatements and omissions, the Affidavit still "set forth ample corroboration of CI–1's information" to find "probable cause to believe that communications concerning the narcotics-related offenses under investigation were occurring inside" 3–Way Auto. *United States v. Juan Fermin,* No.

---

3. The 360–month term consisted of a concurrent prison term of 300 months for Counts Two and Three, followed consecutively by a concurrent prison term of 60 months for Counts Four and Six. (*See* Judgment of Conviction, filed October 20, 1993 (Docket No. 279).)

4. A judgment of conviction becomes final on the date the Supreme Court either "affirms a conviction on the merits on direct review or

denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires," *Clay v. United States,* 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003) (citations omitted), or on the date that the time for filing an appeal expires if the prisoner failed to appeal from the entry of the judgment of conviction, *Moshier v. United States,* 402 F.3d 116, 118 (2d Cir.2005).

91 CR. 634, 1992 WL 188372, at *2–3 (S.D.N.Y. July 30, 1992).

Fermin made a second attempt after his conviction when, on September 18, 1992, he moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. In his Rule 33 motion he argued not only that the Government made misstatements and omissions rendering CI–1's information unreliable, but, for the first time, Fermin asserted that CI–2's information was unreliable as well. Judge Freeh denied the motion, finding that there was sufficient, independent evidence corroborating the information provided by both CI–1 and CI–2 to find probable cause.

Fermin made his third attempt during the appeal of his conviction and sentence, where he again argued that the Wiretap Evidence should have been suppressed because CI–1 and CI–2's information was unreliable. This attempt failed when the United States Court of Appeals for the Second Circuit affirmed Judge Freeh's ruling that law enforcement had properly obtained the Wiretap Evidence. *See Juan Fermin,* 32 F.3d at 677.

Despite rejecting Fermin's attempt to allege reversible error because of the Government's misinformation, the Second Circuit vacated Fermin's sentence on other grounds. The Second Circuit found that the sentencing court had improperly enhanced Fermin's sentence on grounds that Fermin had a supervisory role in the 3–Way Auto Organization, without first making "specific factual findings" to that effect. *See id.* at 682. The case was then remanded for resentencing.[5]

On December 21, 1994, Judge Mukasey resentenced Fermin to a total prison term of 300 months (consisting of concurrent 240–month prison terms for Counts Two and Three, followed consecutively by concurrent 60–month prison terms for Counts Four and Six), followed by a ten-year term of supervised release. (*See* Judgment of Conviction, filed Dec. 23, 1994 (Docket No. 290).) The 60–month reduction of the prison term for Counts Two and Three reflected the removal of the supervisory role enhancement. Fermin's second judgment of conviction was entered on January 24, 1995. Because Fermin never appealed this second judgment of conviction, it became final on February 3, 1995, the date on which the time for filing an appeal expired. *See* n. 4 *supra; see also* Fed. R.App. P. 4(b)(1)(A) (1995) (providing criminal defendants ten days from entry of judgment of conviction to file notice of appeal).

## C. *THE THIRD JUDGMENT OF CONVICTION*

On June 7, 1999, Fermin filed his first § 2255 petition to vacate his convictions and sentence. He again argued that the Government should not have withheld information regarding CI–1 and CI–2, and the failure to disclose such information meant that the Wiretap Evidence should have been suppressed. The Government's withholding of the information, Fermin argued, violated his right to the effective assistance of counsel, and his right to receive material exculpatory and impeachment evidence as guaranteed by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. Judge Mukasey denied his § 2255 petition as time barred. Because Fermin's judgments of conviction became final before the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Judge Mukasey found that Fermin should

---

**5.** On February 21, 1995, the Supreme Court denied Fermin's petition for a writ of certiorari to review the Second Circuit's decision. *See Juan Fermin v. United States,* 513 U.S. 1170, 115 S.Ct. 1145, 130 L.Ed.2d 1104 (1995).

have filed his petition by April 24, 1997. *See Mickens v. United States,* 148 F.3d 145 (2d Cir.1998) (holding that habeas petitions challenging judgments of conviction that became final before the effective date of the AEDPA are not time barred if filed within one year from AEDPA's effective date, April 24, 1996).

Judge Mukasey did, however, vacate Fermin's conviction and sentence with respect to Count Four after the Government conceded that the evidence was insufficient to support a conviction on that count. After several years of briefing, on April 10, 2006, Judge Mukasey resentenced Fermin to a total prison term of 262 months (consisting of a 262–month term for Count Two and a 240–month term for Count Three, to run concurrently), followed by a six-year term of supervised release (consisting of a six-year term for Count Two and a three-year term for Count Three to run concurrently). (*See* Judgment of Conviction, filed Apr. 10, 2006 (Docket No. 394).) This third judgment of conviction was entered on April 28, 2006 and affirmed by the Second Circuit on May 6, 2008. *See United States v. Freddy Fermin,* 277 Fed. Appx. 28 (2d Cir.2008). The judgment of conviction became final on October 6, 2008, when the Supreme Court denied Fermin's petition for a writ of certiorari. *See Freddy Fermin v. United States,* 555 U.S. 925, 129 S.Ct. 298, 172 L.Ed.2d 217 (2008).

## D. *THE INSTANT § 2255 PETITION*

On July 19, 2010, Fermin filed the instant § 2255 petition. Fermin argues for the first time that his trial counsel, Thomas Dunn ("Dunn"), provided ineffective assistance by failing to advise him that pleading guilty could have resulted in a reduced sentence (the "Guilty Plea Claim"). Fermin further asserts two claims regarding the Wiretap Evidence (the "Wiretap Claims"): (1) that the Government's alleged failure to disclose information about CI–1 and CI–2 was a violation of its *Brady* obligations; and (2) that trial counsel Dunn and appellate counsel Kenneth Caruso and Cheryl Sturm were either actually ineffective or rendered constructively ineffective because of the Government's alleged failure to disclose that information.[6]

## II. *DISCUSSION*

### A. *SECTION 2255 PETITIONS FOR POST–CONVICTION RELIEF*

As a starting point, the Court notes that Fermin is a pro se litigant. Accordingly, his submission must be held to "less stringent standards than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993) (*quoting Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). The Court must construe Fermin's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (citation omitted). A pro se litigant, however, is not exempt "from

---

**6.** On May 16, 2011, Fermin sought to amend his § 2255 petition to add a claim alleging that the petit jury's failure to identify the controlled substance he was found to have been trafficking violated his Sixth Amendment right to a jury trial. However, the Court denied Fermin's request to amend his petition because, at the time of the request, nearly a full year had passed since Fermin submitted his initial petition, and because the

motion to amend came near the end of a 60–day extension that the Court had already granted to him in order to reply to the Government's opposition. *See* Fed.R.Civ.P. 15(a)(2); *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 283 (2d Cir.2000) (holding that court may refuse leave to amend because of "undue delay") (*citing Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

compliance with relevant rules of procedural and substantive law." *Boddie v. New York State Div. of Parole,* 285 F.Supp.2d 421, 426 (S.D.N.Y.2003) (*quoting Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)).

■ Under § 2255,

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). For the purposes of § 2255, the term "sentence" refers to *both* the prisoner's sentence and underlying conviction. *See Johnson v. United States,* 623 F.3d 41, 45 (2d Cir.2010) (noting that "the word 'sentence' in § 2255(a) is understood to encompass both the conviction and the sentence."). Therefore, a prisoner may use a § 2255 petition to challenge both his conviction and sentence. *Id.* ("As a practical matter, courts routinely allow federal prisoners to challenge their conviction, in addition to their sentence, under § 2255(a).").

As discussed below, because the instant § 2255 petition is not "second or successive," the Court has the power to reach the merits of Fermin's claims. However, this is of no avail to Fermin, as his claims are either time barred or otherwise meritless. The Court will first discuss the "second or successive" question before addressing the claims directly.

**B.** *SECOND OR SUCCESSIVE PETITIONS*

■■ According to the AEDPA, a prisoner may make only one § 2255 petition. If a prisoner wishes to file a "second or successive" petition, he must first obtain permission from the court of appeals. 28 U.S.C. § 2255(h). However, if "there is a new judgment intervening between ... two habeas petitions, an application challenging the resulting new judgment is not second or successive at all." *Magwood v. Patterson,* —— U.S. ——, 130 S.Ct. 2788, 2802, 177 L.Ed.2d 592 (2010) (internal citation and quotations omitted); *see Johnson,* 623 F.3d at 45–46 (applying *Magwood* to § 2255 petitions to hold that petitioner's § 2255 petition filed subsequent to an amended sentence is not second or successive). In the Second Circuit, a § 2255 petition that attacks a "new judgment" of conviction resulting from a prior, successful § 2255 petition is considered non-successive even if the subsequent petition itself challenges only the convictions and sentences that were left unaltered by that new judgment. *Id.* at 46.[7]

■ In this case, the Court entered a new judgment of conviction on April 28, 2006, after Fermin's first § 2255 petition. Because there is an intervening judgment of conviction between Fermin's first and subsequent § 2255 petitions, the instant

---

**7.** For instance, the petitioner in *Johnson,* who was originally convicted and sentenced to three prison terms for bank robbery, armed bank robbery, and use of a firearm in connection with a crime of violence, successfully petitioned under § 2255 to vacate his bank robbery conviction and sentence. *Id.* at 42–43. The Second Circuit ruled that defendant's subsequent § 2255 petition, which challenged his convictions and sentences for the armed bank robbery and use of a firearm counts, was not second or successive and thus did not require leave to appeal, even though that portion of the judgment of conviction remained unaltered after the first successful § 2255 petition. *Id.* at 46.

§ 2255 petition is non-successive. The Court may therefore proceed to adjudicate the merits of Fermin's claims.

## C. *THE WIRETAP CLAIMS*

Fermin rests his instant § 2255 petition, in part, on two claims attacking how the Government handled certain information regarding the 1999 Wiretap application. Fermin claims that the Wiretap Claims are no longer time barred, although they were previously dismissed as such when the Court considered Fermin's first § 2255 petition. For the reasons discussed below, the Wiretap Claims must be denied as time barred.

### 1. *Timeliness*

■ The AEDPA establishes a one-year limitations period for petitions seeking relief under § 2255. The one-year limitations period starts from the latest of four possible dates;

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to make a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively appli-

cable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). In other words, a petitioner must file a § 2255 petition within one year from the date his judgment of conviction becomes final, but the beginning of the limitations period may be delayed if certain circumstances beyond the petitioner's control prevent him from raising the claim earlier.

In situations where multiple judgments of conviction have been issued, the statutory text does not indicate which judgment of conviction is relevant for determining the limitations period. The Supreme Court has stated that if the multiple judgments all stem from direct review of the initial judgment of conviction, then the limitations period for habeas claims attacking a state prisoner's convictions starts on the date that "both [the prisoner's] conviction *and* sentence became final by the conclusion of direct review or the expiration of the time for seeking such review." *Burton v. Stewart*, 549 U.S. 147, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007) (emphasis added). However, even assuming that *Burton* also applies to federal prisoners,[8] it does not address situations in which a newer judgment of conviction arises not from direct review of the initial judgment, but from a collateral attack on the conclusions made on direct review, after the direct review has ended and the last judgment of convic-

---

**8.** It is unclear whether *Burton* actually applies to § 2255 petitions. According to the Supreme Court, the *Burton* rule extends to habeas petitions for state prisoners because the AEDPA states that the applicable limitations period for "a person in custody pursuant to the judgment of a State court" shall run from "the date on which the judgment

became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). However, with regard to § 2255 petitions, the AEDPA merely states that the applicable limitations period shall run from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1).

tion issued by the direct review was finalized.

There are two possible approaches in this situation. In one approach, the date of the newer judgment of conviction (issued from the successful collateral attack) should always be used to calculate the limitations period, because the newer judgment entirely replaces the older judgment. In another approach, the date of the newer judgment should be used to calculate the limitations period for claims attacking the convictions or sentences altered by the newer judgment, while the older judgment (issued from direct review) should be used to calculate the limitations period for claims attacking the unaltered convictions or sentences, because the newer judgment merely *supplements* the older one.[9]

■ Fermin contends, contrary to the Government's assertions, that the Wiretap Claims are not time barred because he filed the instant § 2255 petition within one year of the date on which his latest judgment of conviction was finalized. However, Fermin confounds the successive-petition analysis with the timeliness analysis by erroneously assuming that the judgment of conviction relevant for determining whether a § 2255 petition is second or successive (*i.e.*, the latest judgment of conviction) is also the judgment of conviction relevant for determining whether a claim is time barred.

The Supreme Court in *Magwood* explicitly reserved the question of whether a judgment of conviction intervening between two habeas petitions always makes the later petition non-successive. *See Magwood*, 130 S.Ct. at 2802 (noting that the Supreme Court had "no occasion to address [the] question" of whether "a petitioner who obtains a conditional writ as to his sentence [may file] a subsequent application challenging not only his resulting, *new* sentence, but also his original, *undisturbed* conviction"). In *Johnson*, the Second Circuit answered that question in the affirmative by focusing exclusively on the newer judgment of conviction when determining whether a § 2255 petition is second or successive. *See Johnson*, 623 F.3d 41, 46 (stating that petitioner's subsequent § 2255 petition "would not be successive because it is his first § 2255 [petition] challenging the *amended* judgment of conviction") (emphasis added). However, several reasons caution against importing the Second Circuit's reasoning as to the success-petition inquiry into the timeliness inquiry.

First, the statutory language of § 2255 suggests that the judgments of conviction relevant to each inquiry may differ. Section 2255 uses the term "judgment of conviction" to refer to the convictions and sentences used to calculate the limitations period, 28 U.S.C. § 2255(f)(1), but uses the term "sentence" to refer to the convictions and sentences used to determine whether a § 2255 petition is second or successive, *see Johnson*, 623 F.3d at 45. However, neither of these terms is specifically defined in § 2255 or in the rest of the AED-

---

9. There is one case in this district, *Barnett v. United States*, 11 Civ. 2736, 2012 WL 1003594 (S.D.N.Y. Mar. 26, 2012), in which the latest judgment of conviction was used to calculate the limitations period for the second of two habeas petitions separated by an intervening judgment, even though the petitioner was attacking his underlying convictions. However, that decision does not affirmatively hold that the date of the latest judgment of conviction should be used to calculate the limitations period, for two reasons. First, the Court presumed without citing precedent that the latest judgment of conviction was the relevant judgment for the timeliness inquiry. Second, such a holding is unnecessary to the decision because the Court found the petition time barred even with respect to the latest judgment of conviction.

PA, Section 2255's use of different, undefined terms to refer to the convictions and sentences relevant to the successive-petition and timeliness inquiries suggest that the judgments of conviction relevant to each inquiry may not necessarily be identical.

■■■■■ Second, the successiveness and timeliness inquiries are aimed at fundamentally different questions: the limitations problem asks, "are these claims too stale?" while the "second or successive" problem asks, "are these claims repetitive?" Accordingly, the standards applied to each inquiry are different as well. For instance, each allows the district court different levels of discretion to overlook a petitioner's failure to meet particular requirements. Under the timeliness inquiry, not only can the Government waive the limitations issue altogether, *see Green v. United States*, 260 F.3d 78, 85 (2d Cir. 2001), but a court may "equitably toll" the limitations period in certain cases, *see Bolarinwa v. Williams*, 593 F.3d 226, 231–32 (2d Cir.2010). If a § 2255 petition is successive, however, the Government cannot waive the successiveness issue, and a district court has no discretion whatsoever to proceed to the merits. *Corrao v. United States*, 152 F.3d 188, 191 (2d Cir.1998). The decision to proceed to the merits is instead put in the hands of the court of appeals, which may allow the district court to proceed only in very limited circumstances. *See* 28 U.S.C. § 2255(h). The application of different standards to the successive-petition and timeliness inquiries further suggests that the relevant judgment of conviction in each inquiry may be different.

Third, there are sound policy reasons supporting the conclusion that the judgment of conviction relevant for the timeliness inquiry is different from the judgment of conviction relevant for the successive-petition inquiry. If the later judgment of conviction is always the basis for calculating the limitations period, as in the successive-petition inquiry, a petitioner could continually re-litigate formerly time-barred claims through subsequent § 2255 petitions as long as one of his convictions or sentences is overturned or altered as a result of a prior petition. Therefore, if a prisoner successfully petitions to overturn one of his convictions or sentences but the rest of his claims are declared time barred, he could reincarnate those time-barred claims when the new judgment of conviction is entered. In such a case, the prisoner could immediately file another § 2255 petition, using the same language, exhibits, and arguments, and evade the limitations period by operation of this rule. In its most extreme application, this rule would dictate that a petitioner would be entitled to relitigate a formerly time-barred claim even if the intervening judgment of conviction was entered, for example, only to correct a typo. Such absurd results can be avoided by interpreting § 2255 as requiring that courts, when undertaking the timeliness inquiry, identify the latest judgment of conviction in which the challenged conviction or sentence remained unaltered, and using that judgment of conviction for calculating the limitations period for claims challenging that conviction or sentence.[10]

---

**10.** This rule of decision is further supported by the words of the *Magwood* majority itself. In *Magwood,* the Supreme Court rested its decision on the presumption that courts could easily dispose of a petitioner's repetitive legal arguments raised in multiple habeas petitions. *See Magwood,* 130 S.Ct. at 2802 n. 15 ("[t]he dissent's concern that ... a petitioner may reraise every argument against a sentence that was rejected by the federal courts during

Because of these considerations, the newer judgment should be used to calculate the limitations period as to claims attacking the altered convictions or sentences, while the older judgment should be used to calculate the limitations period in which to bring claims attacking the unaltered convictions or sentences.

## 2. Application

 The Wiretap Claims essentially attack Fermin's convictions—they do not allege that Fermin was rightly convicted but wrongly sentenced, but rather that Fermin should never have been convicted at all. Because Fermin's remaining convictions have been unaltered since the first judgment of conviction, the limitations period should be calculated with respect to the date Fermin's latest judgment of conviction on direct review became final.

When taken into consideration with the one-year grace period for judgments of conviction that became final prior to the AEDPA's effective date, the Court concludes that the limitations period for any claims attacking Fermin's convictions expired on April 24, 1997.[11] Accordingly, the relevant limitations period for the Wiretap Claims expired on April 24, 1997, just as it did in the first § 2255 petition. Because Fermin did not file the instant § 2255 petition until September 30, 2009, the Wiretap Claims are time barred.[12]

## D. THE GUILTY PLEA CLAIM

 Fermin makes the instant § 2255 petition, in part, because he alleges that his trial counsel Dunn was ineffective by failing to inform him of his right to plead guilty even without a plea agreement

---

the first round of habeas review is ... hyperbolic. It will not take a court long to dispose of such claims where the court has already analyzed the legal issues."). This presumption would be undermined if the amended judgment of conviction were the sole judgment relevant to calculating the limitations period, because that rule would force courts to recalculate the limitations period every time a new § 2255 petition raising the previously-time barred claim follows a new judgment of conviction, potentially yielding a different result each time.

This rule of decision is also consistent with Burton. Burton illustrates one of the AEDPA's major goals—"streamlining federal habeas proceedings." Rashad v. Lafler, 675 F.3d 564, 568 (6th Cir.2012). Burton makes sure that all possible claims could be brought in one habeas petition—by starting the limitations clock for all claims made in a habeas petition challenging final decisions made on direct review only on the date the direct review comes to an end, i.e., the latest date on which the defendant's conviction or sentence becomes final on direct review; petitioners "who have their convictions affirmed but their sentences vacated" would not have to file "dual petitions," one related to their convictions and one related to their sentences. Rashad, 675 F.3d at 568. The rule enunciated

here further streamlines federal habeas proceedings by mandating that all possible claims that could be brought should be brought in one petition.

11. See I–C, supra. In contrast; because Fermin's current sentence stems from the third judgment of conviction, the relevant limitations period for any claims attacking that sentence ran from October 6, 2008 to October 6, 2009.

12. The Government invokes Judge Mukasey's prior ruling that the Wiretap Claims were time barred to argue that they are still time barred under the "law of the case" doctrine, which states that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." Johnson v. Holder, 564 F.3d 95, 99 (2d Cir.2009) (citation and internal quotation marks omitted). The Government is correct, albeit not for the reason that it puts forward; the law of the case dictates that the Wiretap Claims are time barred, not because they were held time barred for all time, but because they were held time barred for the same limitations period at issue here, i.e., November 11, 1995 to April 24, 1997.

and the potential benefits of doing so. To gather evidence in support of his claim, Fermin seeks an evidentiary hearing pursuant to § 2255(b). However, an evidentiary hearing is not warranted in this case.[13]

Section 2255(b) states:

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of facts and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). To be entitled to relief on ineffective assistance grounds, a petitioner must meet the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), by showing that (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, 104 S.Ct. 2052, and (2) counsel's "deficient performance prejudiced the defense," *id.* at 687, 104 S.Ct. 2052.

 Typically, ineffective assistance claims based on off-the-record interactions with trial counsel, as here, cannot be determined simply by examining the motions, files, and records before a district court. *See Chang v. United States*, 250 F.3d 79, 85 (2d Cir.2001). However, to obtain an evidentiary hearing "a petitioner 'must demonstrate a colorable claim,' and the court must evaluate whether a hearing would 'offer any reasonable chance of al-

tering its view of the facts.'" *Bennett v. United States*, No. 03 Civ. 1852, 2004 WL 2711064, at *3 (S.D.N.Y. Nov. 23, 2004) (*quoting Chang*, 250 F.3d at 84, 86); *see also Castillo v. United States*, No. 07 Civ. 2976, 2010 WL 3912788, at *2 (S.D.N.Y. Sept. 8, 2010). Otherwise, it is "within the district court's discretion to choose a middle road" if other means would "avoid[ ] the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and ... the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing." *Chang*, 250 F.3d at 86.

Fermin not only fails to meet his burden under *Chang* for an evidentiary hearing, but he fails to demonstrate that his claim is colorable enough to warrant more discovery than the Government has already provided. In support of his case, Fermin makes only unsubstantiated and conclusory assertions that Dunn failed to advise him of his right to plead guilty even if he did not cooperate with the Government. Fermin does not claim that never discussed with Dunn the possibility of pleading guilty, nor does Fermin recount in any detail specific conversations with Dunn or how during any such conversations Dunn failed to advise him of his right to plead guilty. *See, e.g., Riggi v. United States*, No, 04 Civ. 7852, 2007 WL 2245595, at *8 (S.D.N.Y. Aug. 6, 2007) (denying § 2255 petition because petitioner "said only in the most conclusory terms he instructed his counsel to file a notice of appeal," without giving "the dates or locations of

---

13. The Court notes that the Guilty Plea Claim is possibly time barred, as on first glance the relevant limitations period for this attack on Fermin's underlying conviction is the same as the Wiretap Claims' limitation period. Although the Government does not raise an untimeliness defense, the Court is authorized to raise the issue sua sponte, *Acosta v. Artuz*, 221 F.3d 117, 124 (2d Cir.2000). Before a

court dismisses a § 2255 petition as time barred, however, the petitioner must first be afforded notice and an opportunity to be heard. *Id.* In this case such an opportunity would require another round of briefing. Because the Guilty Plea Claim can be expediently disposed of on the merits, the Court declines to raise the timeliness issue at this time.

any conversations with [counsel] or detail the nature of such conversations"). This is not a situation where an evidentiary hearing is necessary for the petitioner to discover facts unavailable to him. Indeed, only two people have knowledge of the discussions—Dunn, and Fermin himself. Fermin's failure to provide specific facts about any conversations to support his claim suggests that a testimonial hearing would do nothing to reveal such facts.

Against this bare-bones assertion of ineffectiveness, the Government submits a written affidavit by Dunn. Dunn testifies only that he remembers "discussing the prospect of cooperation with [ ] Fermin," and that he "would have counseled [Fermin] on the option of pleading guilty to the charged offenses during those discussions." (*See* Gov't Reply, Ex. H.) These statements neither support Fermin's claim nor conclusively undermine it. However, it is unsurprising that Dunn can recall nothing further about a conversation which occurred nearly twenty years ago, and which he had no need to memorialize until Fermin raised this claim for the first time all these years later. In fact, Dunn's inability to remember owing to the lengthy passage of time suggests that an evidentiary hearing is unlikely to elicit any more evidence. Thus, with only Fermin's own conclusory allegations to support the Guilty Plea Claim, and without indication that an evidentiary hearing or any other discovery would be fruitful, the Court denies Fermin's claim without a hearing. *See, e.g., Diunov v. United States,* No. OS Civ. 3184, 2010 WL 2483985, at *12 (S.D.N.Y. Jun. 16, 2010); *United States v. Hernandez–Uberia,* No. 07 CR. 378–03, 2010 WL 1948586, at *2 (S.D.N.Y. May 11, 2010); *see also Muyet v. United States,* No. 01 Civ. 9371, 2004 WL 1746369, at *9 (S.D.N.Y. Aug. 3, 2004) ("Without any sort of evidence other than [a petitioner's] own tenuous claims, a court may dismiss a petition without a hearing.").

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the petition (Docket No. 2) of petitioner Freddy Fermin ("Fermin") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED.

As Fermin has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(1)(B).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of the Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**